UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

April Bezdichek,                                    Court File No. 08-6196 (JNE/JJG)

          Plaintiff,

v.                                            **PLAINTIFF'S MEMORANDUM**
                                              **IN OPPOSITION TO DEFENDANTS'**
                                              **MOTION FOR SUMMARY JUDGMENT**

Hilton Hotels Corporation d/b/a
HHC-Hilton Minneapolis H&T, and
James M. Vennewitz,

          Defendants.

### INTRODUCTION

On August 30, 2007, Plaintiff April Bezdichek was sexually assaulted and battered by her

Manager, Defendant James Vennewitz. This assault took place during a management party held

in Defendant's hotel Boardroom where other inappropriate sexual acts were occurring

simultaneously. These incidents have been verified by third parties.

Plaintiff had been sexually battered by Defendant Manager Vennewitz on another

occasion when he pushed up her shirt and grabbed her bare breasts. She reported this assault to

Manager Kim Thompson and to Human Resources. No actions were taken on these prior

complaints.

After the events of August 30, Plaintiff Bezdichek was warned by Managers Vennewitz

and Thompson to keep her mouth shut about what happened. However, she reported the sexual

misconduct to Human Resources. In response, Plaintiff was no longer called by Manager

Thompson to take on work shifts. Further, given the nature of the sexual violations, Plaintiff felt

she could no longer continue working with Defendant Hilton.

1

SCANNED
DEC 2 3 2009
U.S. DISTRICT COURT MPLS

Defendants have brought this Motion to dismiss all counts of Plaintiff's Complaint. Although Plaintiff Bezdichek voluntarily agrees to dismiss her intentional infliction of emotional distress claim, all other counts raise genuine issues of material fact and are inappropriate for summary judgment.

## STATEMENT OF FACTS

In October of 2005, Plaintiff April Bezdichek was hired as a cocktail server for Defendant Hilton Hotels. (Bezdichek Depo. at 35-37). She reported to Manager Kim Thompson. (Id. at 56).

### 1. Prior incidents of sexual harassment by Manager James Vennewitz

Within the first six months of Plaintiff's employment, Defendant Manager Vennewitz started making comments about Plaintiff and how she looked in her uniform. (Bezdichek Depo. at 65). He commented how nice her "butt looked" and how good she looked in the uniform. (Id.). At first, she took it as a compliment, but he did it so often that it became offensive. (Id. at 71-72). He also began hugging her at work. (Id. at 65). In fact, he did so on about 90% of her shifts. (Id. at 66). This behavior continued until August 30, 2007, the night of the orgy described in the Complaints of Plaintiffs Bezdichek and Smith. (Id. at 66).

In the summer of 2007, Plaintiff Bezdichek went to Defendant Hilton's Human Resources Department after an incident with Defendant Manager Vennewitz. (Id. at 47). Plaintiff spoke with the Human Resources Director at the time, Tracie Schultz. (Id.).

Specifically, in the summer of 2007, Plaintiff Bezdichek and a co-worker, Kristin Lessard, went to the Chambers, another hotel, and met Managers Victor Salomone and James Vennewitz. (Bezdichek Depo. at 61). Managers Salomone and Vennewitz asked Plaintiff and Lessard to go out for drinks with them. (Bezdichek Depo. at 62). Prior to this incident, Plaintiff had not been out socially with Manager Vennewitz. (Id. at 65). Vennewitz had been drinking heavily that night.

2

(Id. at 77). Specifically, according to Bezdichek, Defendant Manager Vennewitz was attempting to get Plaintiff and Lessard to take off their clothes in a hotel suite that had a sheer curtain overtop a window overlooking the bar area. (Id. at 61; 85-86). He wanted them to put on a show for him. (Id. at 61). Vennewitz was also trying very "touchy feely" and trying to put his arms around Plaintiff. (Id. at 86-89). An owner of Chambers, George Prine, also encouraged Plaintiff and Lessard to perform behind the curtain, saying he wanted to potentially hire females to perform behind the curtain. (Id. at 83).

Lessard asked Plaintiff to stay the night at her apartment after being out that evening. Vennewitz also asked to stay, as he had been drinking. (Bezdichek Depo. at 92). Plaintiff went straight to bed when they got to the apartment and shut the door. (Id. at 94). At some point in the middle of the night, Plaintiff woke up, finding her shirt and bra pushed up, with Manager Vennewitz lying in bed with his hands on Plaintiff's breasts. (Id. at 97). He had lifted her bra over her breasts and was lying in the bed with her. (Id. at 61). Plaintiff pushed him off of her and ran out of the room. (Id.).

Plaintiff reported this incident to her Manager, Kim Thompson. (Bezdichek Depo. at 103-104). Thompson merely laughed it off. (Id. at 104). Bezdichek specifically informed Thompson about Defendant Manager Vennewitz touching her bare breasts in the bed. (Id. at 104). Plaintiff also reported this assault to Tracie Schultz in Human Resources. (Id. at 106-108). Schultz and Thompson deny that Bezdichek reported this incident, but that is a fact dispute inappropriate for summary judgment. (Schultz Depo. at 45-46); Thompson Depo. at 69-70). Interestingly, however, Thompson does recall Plaintiff telling her about going to the Chambers with Vennewitz. (Thompson Depo. at 72). She further testified Plaintiff told her about the owner of Chambers, George Prine, asking them to dance behind a veiled curtain. (Id. at 73).

3

Further, Thompson admits learning about Vennewitz coming to Lessard's apartment.

(Thompson Depo. at 78).

## 2. **Plaintiff was sexually battered by Manager Vennewitz at a company party where sexual acts were occurring**.

On the evening of August 30, Manager Vennewitz called Plaintiff Bezdichek a little after

1:00 a.m. and asked her to come to the banquet room at Defendant Hilton. (Bezdichek Depo. at

173)(Vennewitz Depo. at 43). Vennewitz admits he only called Plaintiff and no other employees.

(Id. at 43). Bezdichek arrived at the Hilton around 1:45 a.m., along with a friend. (Bezdichek

Depo. at 176-177). When she arrived at the banquet room, Plaintiff introduced her friend to another

manager, David Bullerman, Manager Thompson and Manager Vennewitz, among others. (Id. at

180). Most everyone appeared intoxicated. (Id. at 207). The conference table was lined with liquor

bottles and people were drinking. (Id. at 181-182). While in the room, Plaintiff observed Manager

Dale Nelson on top of a female band member, who was trying to push him away. (Id. at 182). The

woman was obviously trying to resist Nelson's advances. (Id. at 189-191). The female band

member was lying flat on the table, face up and Nelson was on top of her, engaged in acts

simulating sex. (Id.). She also observed a female employee sitting on Manager Bullerman's lap

and rubbing his legs by his penis. (Id. at 198, 239).

Shortly after her arrival, Manager Vennewitz pulled Plaintiff down onto his lap and began

pumping her up and down on his erect penis. (Bezdichek Depo. at 183– 184). Manager Vennewitz

admits that Plaintiff was on his lap after she arrived. (Vennewitz Depo. at 45). She tried several

times to get away, but he continued pulling her back down on his lap and on his penis. (Bezdichek

Depo. at 185–186). Plaintiff felt extremely violated and uncomfortable and decided to find her

friend to go home. (Id. at 186). Plaintiff said she needed to go to the bathroom to get away and

when she returned to the vicinity to find her friend, Vennewitz was by the escalator, waving his

4

room key at Plaintiff and begging her to come to his room with him. (Id. at 186-187). At some point after the assault, Vennewitz told Plaintiff that he was going to see to it that Deb Smith, who is also pursuing claims against Defendant Hilton, was fired. (Id. at 201-202).

### 3. **Others corroborated the sexual misconduct occurring at the party**.

Manager (and fellow Plaintiff) Deb Smith opened the door and observed sexual misconduct by management. She saw a female banquet employee running her hands over Manager Bullerman's thighs and genitals while he moaned, "ooh." (Smith Depo. at 141, 170). She also saw a woman lying on a table with Manager Dale Nelson on top of her. (Id. at 143). The woman had her legs spread apart and her knees bent at the end of the table, and Nelson was in between her knees, leaning over her. (Id. at 144-145). The top of Nelson's body was lying on top of the woman. (Id. at 146). She could not tell if his pants were unzipped, but he was making sexual movements against her, grinding his hips into her groin. (Id. at 146-147). It appeared to Plaintiff that they were having sex, but with clothing on. (Id.). She heard them moaning, as well. (Id.). The room itself was covered with wine bottles, alcohol bottles and beer bottles. (Id. at 150). There was much laughing when Smith opened the door. (Id.). When she opened it, a lot of "oooohhs" went through the room, as if people realized they were "busted." (Id.). Smith was horrified by what she witnessed in the Boardroom. (Smith Depo. at 148).

John Youngdahl, an employee who was present at the party, told Human Resources about inappropriate conduct, including a sexual comment about another employee's "crotch." (See Exhibit 4). Even Manager Salamone told HR there was "way too much inuendo's"(sic) between Manager Dale Nelson and employee Sarah Haviland. (Exhibit 5). Manager Heather Huggins corroborated some of what Plaintiff Deb Smith observed that night. She stated she observed Manager Nelson touching a female band member. (Exhibit 6). He had his arms wrapped around

the woman and she was pulling away from him.  (Id.)  It was an "awkward situation."  (Id.).

Tracie Schultz' notes reflect that Sarah Haviland was pouring shots into manager's mouths,

straddling the person she was pouring the shots into, and that she flashed John Youngdahl

(showed him that "the carpet matched the drapes").  (Exhibit 7).

## 4.   **Plaintiff was warned against reporting the incidents that occurred in the Boardroom.**

On the morning of August 31, Manager Kim Thompson told Plaintiff to keep "hush hush"

about the sexual events of the prior evening. (Bezdicheck Depo. at 161). In fact, Thompson begged

her not to say anything about the events of August 30. (Id. at 163). Additionally, Defendant

Manager Vennewitz left Plaintiff several voicemails asking her to not tell anyone about the events

of August 30.  (Id. at 161).

Plaintiff Bezdichek spoke with HR Director Schultz on September 5 about the evening of

August 30 after a complaint by Manager (and fellow Plaintiff) Deb Smith who reported

Bezdichek's assault and battery. (Bezdichek Depo. at 209-216). She specifically reported

Defendant Manager Vennewitz's attempts to solicit Plaintiff to come to his hotel room and the

pumping of her body up and down on his erect penis. (Id.). She further reported that Manager Kim

Thompson told her to keep "hush hush" about the events of that night. (Id. at 213). She reported

that she believed the events in the boardroom were an "orgy." (Id. at 215). She believed it was an

orgy as she saw two people engaging in acts that, while clothed, could have been sex and based on

Vennewitz's assault and battery of Plaintiff.  (Id. at 216).

Shortly after the report, Plaintiff went to California for a few days, but repeatedly was

checking with Defendant Hilton about available shifts.  (Bezdichek Depo. at 221).  Before her

complaints, while on-call, Plaintiff received enough shifts that her work was essentially full time.

(Id. at 221).  However, after her complaints, she was not offered shifts (unlike before her reports).

6

(Id. at 221:19-22). Because of these events, and because she felt emotionally humiliated and violated by the acts of Defendant Manager Vennewitz, Plaintiff made the decision to move to California. (Id. at 225). Plaintiff felt forced to quit because she was being retaliated against. (See Id. at 227-228). She worried about Manager Thompson's reputation of engaging in reprisal when others get on her bad side. (Id.). She testified about a prior employee who had been a long-term, stellar employee. When she reported an issue about Kim Thompson, she was terminated in less than a month. (Id.). After the incidents stemming from the August 30, 2007 party, when Plaintiff went to California, she attempted to seek a transfer to a Hilton in California. However, her application was denied and she attributes the denial to her complaints about the events of August 30. She was a great employee with a clean record. (Bezdicheck Depo. at 159-160).

## SUMMARY JUDGMENT STANDARD

A court may only grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

Summary judgment is only appropriate when the evidence, *viewed in the light most favorable to the non-moving party*, shows that there is no genuine issue of material fact. Goins v. West Group, 635 N.W.2d 717 (Minn. 2001)(citations omitted)(emphasis added). Pursuant to Rule 56.03 of the Minnesota Rules of Civil Procedure, the moving party carries the ultimate burden of proof on summary judgment. The Appellate Courts have held:

> Summary rulings are the direct antithesis of the full and fair process found in an adversary proceeding. See, e.g. Hartford Accident and Indem. Co. v. Stauffer Chem. Co., 741 F.2d 1142, 1144 (8th Cir. 1984). Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. Hillebrand v. M-Tron Industries, Inc., 827 F.2d 363 (8th Cir. 1987).

In a motion for summary judgment, the nonmoving party has the benefit of that view of the evidence which is most favorable to him (sic) and is entitled to have all doubts and factual inferences resolved against the moving party. Progressive Cas. Ins. Co. v. Kraayenbrink, 370 N.W.2d 455, 459 (Minn. App. 1985), *pet. for rev. denied* (Minn. Sept. 19, 1985). If any doubt exists as to the existence of a genuine issue of material fact, *the doubt must be resolved in favor of finding that the fact issue exists.* Rathbon v. W.T. Grant Co., 300 Minn. 223, 230, 219 N.W. 2d 641, 646 (1974)(emphasis added).

The role of a court on a Summary Judgment Motion is not to weigh the evidence, but instead to determine whether, as a matter of law, a genuine factual conflict exists. Agristor Leasing v. Farrow, 826 F.2d 732, 734, (8th Cir. 1987). The Minnesota Supreme Court has stated that:

> even if the state of the record leads one to suspect it to be unlikely that one party or another will prevail, that fact is not sufficient basis to refuse a party a day in court concerning issues not shown to be a sham, frivolous, or so insubstantial that trying them would be an exercise in futility.

Larson v. Ind. Sch. Dist. No. 314, 252 N.W.2d 128 (Minn. 1977).

The Court in Larson went on to state that: "Because it is not absolutely clear that there are no disputed questions of material fact involved in plaintiff's claims against defendants, the summary judgment motion in question must fail." Larson, 252 N.W.2d at 130. Bezdichek has established in the record specific facts creating genuine disputes over material facts which must be determined at trial. See, Hunt v. IBM Mid-America Employees' Federal Credit Union, 384 N.W.2d 853, 855 (Minn. 1986). In this matter, there are numerous disputed questions of material fact on the Bezdichek's legal claims. Based on the disputed facts, summary judgment should be denied on all counts. "[S]ummary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons

8

to draw different conclusions." Schroeder v. St. Louis County, 708 N.W.2d 497, 507

(Minn.2006).

## LEGAL ARGUMENT

### A. PLAINTIFF BEZDICHEK HAS MET HER BURDEN OF ESTABLISHING A HOSTILE WORK ENVIRONMENT.

Sexual harassment is expressly recognized as a form of discrimination under the

Minnesota Human Rights Act (MHRA). *See* Minn.Stat. § 363A.03, subd. 13 (2006) ("sexual

harassment" within the definition of "discriminate"). The MHRA defines sexual harassment to

include:

> unwelcome sexual advances, requests for sexual favors, sexually
> motivated physical contact or other verbal or physical conduct or
> communication of a sexual nature when:
> (1) submission to that conduct or communication is made a term or
> condition, either explicitly or implicitly, of obtaining employment
> ...;
> (2) submission to or rejection of that conduct or communication by
> an individual is used as a factor in decisions affecting that
> individual's employment ...; or
> (3) that conduct or communication has the purpose or effect of
> substantially interfering with an individual's employment ... or
> creating an intimidating, hostile, or offensive employment ...
> environment.

*Id.*, subd. 43 (2006). The conduct described in clauses (1) and (2) has been characterized as

"quid pro quo" harassment, while that described in clause (3) is often referenced as "hostile work

environment." Benassi v. Back & Neck Pain Clinic, Inc., 629 N.W.2d 475, 480

(Minn.App.2001), *review denied* (Minn. Sept. 11, 2001). Minnesota courts use the McDonnell

Douglas framework for analyzing MHRA claims at the summary-judgment stage of proceedings.

*Id.: see* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

(1973). The prima facie burden varies depending on the category of sexual harassment alleged.

Benassi, 629 N.W.2d at 480.

For claims of quid-pro-quo harassment, a plaintiff must show that:

> (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; and (4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment.

Id. at 480-81.

For claims of hostile work environment, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on [sex]; (4) the harassment affected a term, condition or privilege of her employment." Frieler v. Carlson Marketing Group, Inc., 751 N.W.2d 558, 565 (Minn. 2008). "In order to demonstrate that the harassment affected a term, condition, or privilege of employment, a plaintiff will have to show the harassment was so severe or pervasive as to alter the conditions of the [plaintiff's] employment and create an abusive working environment" Id. (quotation omitted).

Prior to Frieler, Minnesota courts required a fifth element of proof in hostile-work-environment cases: that "the employer knew of or should have known of the harassment and failed to take timely and appropriate remedial action." Benassi, 629 N.W.2d at 481; see also Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn.1997). In Frieler, the Minnesota Supreme Court held that, following a 2001 legislative amendment to the MHRA, this fifth element is no longer required. Frieler, 751 N.W.2d at 570. Rather, "an employer is subject to vicarious liability for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over a victimized employee." Id.

The court further held that, in cases not involving a tangible employment action, the employer may raise an affirmative defense to liability or damages if it proves by a preponderance

10

of the evidence: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Frieler, 751 N.W.2d at 570-571. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998)).

Minnesota courts look to the principles and interpretations of federal Title VII cases when construing the MHRA. See Costilla v. State, 571 N.W.2d 587, 591 (Minn. App. 1997). The MHRA should be liberally construed for the accomplishment of its purposes, one of which includes protecting Minnesota employees from sexual harassment. Cummings v. Koehnen, 568 N.W.2d 418, 422 (Minn. 1997).

### 1.     Plaintiff Bezdichek was the subject of unwelcome sexual conduct.

Contrary to Defendants' assertions, Plaintiff Bezdichek was subjected to grossly inappropriate and unwelcome sexual conduct. Not only was she sexually battered on an earlier occasion by Defendant Manager Vennewitz (an attack she reported and Defendant Hilton ignored), but she was sexually assaulted and battered in the Boardroom on the evening of August 30. Vennewitz groped her, moved her body up and down on his erect penis and propositioned her. Rather than take any action on any of her complaints, managers told Plaintiff Bezdichek to keep quiet and not report them to Human Resources.

A single incident of sexual harassment can suffice to create liability when it is severe, as it was in this case. A single incident can be sufficient to find a hostile work environment. Moring v. Ark. Dep't of Corr., 243 F.3d 452, 456 (8th Cir.2001) (finding single incident in motel room that involved touching thigh and attempting kiss sufficient to create sexual harassment

11

question for jury); Rorie v. United Parcel Serv., Inc., 151 F.3d 757, 762 (8th Cir.1998) (holding

that supervisor's patting female employee on back, brushing up against her, and telling her she

smelled nice could constitute sexual harassment); Howard v. Burns Bros., Inc., 149 F.3d 835,

840 (8th Cir.1998) (holding that evidence of sexual innuendos and unwanted physical touching

raised jury question of whether work environment was hostile); Burns v. McGregor Electronic

Indus., Inc., 989 F.2d 959, 964 (8th Cir.1993) (noting that sexual harassment need not consist of

only explicit sexual advances, but can occur through sexual propositions, offensive touching, and

sexual innuendo). Clearly, Plaintiff has demonstrated unwelcome sexual harassment.

## 2. The events that occurred in the Boardroom impacted a term, condition, or privilege of employment.

Plaintiff Bezdichek's work environment was impacted immediately. She was warned by

Managers Thompson and Vennewitz against reporting the incidents to anyone. Clearly, the

sexual harassment impacted a term and condition of her employment. A plaintiff may

demonstrate through his or her conduct that harassment is unwelcome. Beard v. Flying J, Inc.,

266 F.3d 792, 798 (8th Cir.2001). Bezdichek's actions of reporting the sexual misconduct to

Human Resources is evidence that the harassment impacted a term and condition of her

employment.

Contrary to Defendants' paltry assertions, two incidents of sexual battery perpetrated by a

manager are sufficient to impose liability. A single incident can be sufficient as set forth above.

Additionally, the conduct as Bezdichek has described it was clearly threatening and

humiliating. Defendants cannot rewrite the facts to suit their argument. They must accept

PLAINTIFF'S facts as true, and Plaintiff's facts demonstrate that the acts were so severe as to

warrant liability.

12

Finally, Plaintiff's work environment was clearly impacted. She was warned by two managers, both Thompson and Vennewitz, against reporting the sexual battery and her observations from the night of August 30. When she ignored the warnings, her work environment suffered. She was no longer given shifts. Further, the nature of the battery made it impossible for Plaintiff to continue working for Defendants, especially considering the failure of Defendant Hilton to take ANY action on her complaints of sexual battery.

### 3.     Defendant Hilton did not take prompt and appropriate remedial measures to correct the harassment.

While Defendants have conveniently papered the file with write-ups relating to the party of August 30 (conveniently relating only to abuse of alcohol), these write-ups failed to address the sexual misconduct that was the reason for the initial complaints. Third parties verified the sexual misconduct. Defendant Hilton does not and cannot dispute this verification. Manager (and fellow Plaintiff ) Deb Smith testified she told Human Resources about the activities in the Boardroom. (Smith Depo. at 178). John Youngdahl, an employee interviewed and who was present at the party, told Human Resources about inappropriate conduct, including a sexual comment about another employee's "crotch." (See Exhibit 1). Even Manager Salamone, who berated Plaintiff Smith for entering the Boardroom, told HR there was "way too much inuendo's"(sic) between Manager Dale Nelson and employee Sarah Haviland. (Exhibit 2). Manager Heather Huggins corroborated some of what Plaintiff Smith observed that night. She stated she observed Manager Nelson touching a female band member. (Exhibit 3). He had his arms wrapped around the woman and she was pulling away from him. (Id.) It was an "awkward situation." (Id.). Tracie Schultz' notes reflect that Sarah Haviland was pouring shots into manager's mouths, straddling the person she was pouring the shots into, and that she flashed John Youngdahl (showed him that "the carpet matched the drapes"). (Exhibit 4). In spite of

13

these revelations, no one was disciplined for sexual misconduct. Clearly, Defendant Hilton did

NOT take prompt and appropriate action relating to sexual harassment. As such, Defendant

Hilton is not entitled to a defense on this basis. Plaintiff has demonstrated a prima face case of

sexual harassment and set forth sufficient fact disputes, making summary judgment

inappropriate.

## B. PLAINTIFF BEZDICHEK HAS SATISFIED THE ELEMENTS OF RETALIATION FOR HER COMPLAINTS OF SEXUAL HARASSMENT.

The MHRA prohibits reprisal against an employee who has filed a complaint about an

unfair, discriminatory practice. Minn.Stat. § 363A.15 (2008); Bahr v. Capella Univ., 765

N.W.2d 428, 433 (Minn .App.2009) *review granted* (Minn. Aug. 11, 2009). Retaliation claims

are analyzed using the legal framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973). Under this analysis, a plaintiff must first establish a prima facie case of reprisal

discrimination. Smith v. Riceland Food, Inc., 151 F.3d 813, 818 (8th Cir. 1998). To do this, the

plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse

employment action; and (3) there was a causal connection between the adverse employment

action and the protected activity. Id. Once the plaintiff has met this burden, the defendant must

rebut the evidence by presenting its own evidence of a legitimate, non-retaliatory reason for the

actions it took against the plaintiff. Id. If the defendant can establish such a reason, the plaintiff

can demonstrate intentional retaliation by proving that the reason given by defendant was mere

pretext for discrimination. See Reeves v. Sanderson Plumbing Prod., Inc., 2000 WL 743663

(U.S. June 12, 2000).

A causal connection may be demonstrated indirectly by evidence of circumstances that

justify an inference of retaliatory motive, including a showing that the adverse action follows

closely in time to the protected activity. Hubbard v. UPI, Intl., Inc., 330 N.W.2d 428, 445

(Minn. 1983). Another case, Bassett v. City of Minneapolis, 211 F.3d 1097, 1106 (8th Cir. 2000), also holds that temporal proximity can demonstrate that causal link between the protected action and the adverse employment action. In Bassett, the Court found a temporal link between an EEOC charge and a negative evaluation sufficient to create an inference of retaliation. See Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1166 (8th Cir.1998)(time lapse of two months between protected activity and discharge may create inference of retaliatory motive); Keys v. Lutheran Family and Children's Servs. of Mo., 668 F.2d 356, 358 (8th Cir.1981)(less than two months between protected activity and adverse employment action). *However, even where temporal proximity is lacking, some courts have found that "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can give rise to the inference."* Porter v. Cal. Dep't of Corr., 383 F.3d 1018 (9th Cir. 2004)(emphasis added).

Here, Defendant Manager Vennewitz and Manager Thompson warned Plaintiff Bezdichek against reporting her concerns to Human Resources. After she did so, Thompson stopped asking Bezdichek to pick up shifts, which is the manner in which she previously obtained work. Retaliation also occurred against others who reported the incident. Manager (and Plaintiff) Deb Smith was written up and suspended on the day she reported the sexual misconduct to Human Resources. (Smith Depo. at 175-176). Then-Human Resources Director Tracie Schultz testified that they had no plans to suspend Smith until after the meeting in which she reported the sexual misconduct. (Schultz Depo. at 38).

In Plaintiff Bezdichek's case, she felt so violated by the actions of Defendant Manager Vennewitz, that she no longer felt comfortable coming into the workplace. Had Defendant Hilton taken action after her initial reports of sexual misconduct by Defendant Vennewitz, the incident in the Boardroom, including the second sexual battery by Vennewitz, may have been

avoided. As such, Plaintiff has set forth a prima facie case of retaliation precluding summary

judgment.

## C. THE MINNESOTA WORKER'S COMPENSATION ACT DOES NOT PREEMPT PLAINTIFF BEZDICHEK'S COMMON LAW CLAIMS.

Defendants attempt to argue that Plaintiff Bezdichek's common law claims are preempted

by the Minnesota WCA. Generally, the WCA provides the exclusive remedy to employees for

personal injuries arising out of and in the course of employment. McGowan v. Our Savior's

Lutheran Church, 527 N.W.2d 830, 833 (Minn.1995). When the WCA provides the employee's

exclusive remedy, district courts are without subject-matter jurisdiction, unless an employee

facing an exclusivity defense can show that the alleged conduct falls within an exception to the

coverage of the Act. Id. One exception to the WCA is what is commonly known as the "assault

exception":

> "Personal injury" means injury arising out of and in the course of
> employment.... *Personal injury does not include an injury caused by the*
> *act of a third person or fellow employee intended to injure the employee*
> *because of personal reasons, and not directed against the employee as an*
> *employee, or because of the employment.*

Minn.Stat. § 176.011, subd. 16 (2002) (emphasis added).

In Fernandez v. Ramsey County, 495 N.W.2d 859 (Minn.App.1993), this court directly

addressed sexual assault and battery in the workplace, and affirmed the denial of the employer's

motion for summary judgment where the plaintiff alleged that she was a victim of sexually-

motivated assaults that were directed at her personally. Id. at 860-63. Thus, the Fernandez court

held that the disputed question of whether an assault and battery are "personally motivated" or

random acts resulting from circumstances of employment is a triable issue. Id. at 863. Although

the McGowan case granted summary judgment to the employer on this issue, courts have since

held that this issue must be one that involves fact specific inquiries. Stengel v. East Side

16

Beverage, 690 NW2d 380, 383-384 (Minn. App. 2004). The Court found that the logic of the McGowan case would effectively render the assault exception meaningless. (Id.). The Court held that the trier of fact must have the opportunity to determine if the motivation for the assault and battery was based on "personal reasons" unconnected with the employment. (Id.).

The Court further stated that the central question is not whether the employee was injured merely while at his or her employment, but whether the injury occurred because the employee was at the job "in touch with associations and conditions inseparable from it." Stengel, 690 N.W. 2d at 384 (citing Johnson v. Ramsey County, 424 N.W.2d 800, 805 (Minn.App.1988) (holding that a kiss had no association with or to the job) (quotation omitted), *review denied* (Minn. Aug. 24, 1988)).

Here, the sexual assaults and batteries perpetrated by Defendant Manager Vennewitz were personal to Plaintiff Bezdichek. They had nothing to do with the nature of her job. They occurred because Defendant Hilton failed to take action upon notice that Vennewitz had a propensity to commit harm.

### D.   SIMILARLY, THE MHRA DOES NOT PREEMPT PLAINTIFF BEZDICHEK'S COMMON LAW CLAIMS.

Courts have been highly inconsistent when applying the law of preemption in the context of the Minnesota Human Rights Act. However, McKenzie v. Rider Bennett, LLP, 2006 WL 839498 (D.Minn. 2008) provided a reminder that, when applying state law, a federal court is bound by decisions of the state's highest court. David v. Tanksley, 218 F.3d 928, 930 (8th Cir.2000). In Wirig v. Kinney Shoe Corp., 461 N.W.2d 374 (Minn. 1990), the Minnesota Supreme Court held that "a sexual harassment action brought pursuant to the MHRA does not bar a parallel action for common law battery." Wirig, 461 N.W.2d at 379. Similarly, in Vaughn v. Northwest Airlines, Inc., 558 N.W.2d 736 (Minn. 1997), the Minnesota Supreme Court held

17

that the plaintiff's "common-law negligence claim survives preemption by the MHRA"

notwithstanding the defendant's assertion that the plaintiff failed to allege separate facts to

support the negligence claim. Vaughn, 558 N.W.2d at 744-45. In the McKenzie case, the Court

held that "her alleged failure to factually distinguish her common-law claims from her MHRA

claims does not necessarily prohibit her from pursuing the common-law claims."

Here, the same law applies. Plaintiff has pled a battery claim, along with companion

negligence claims. She is permitted to alternatively plead based on the Wirig case. While

double recovery may not be permitted, summary judgment is clearly inappropriate on the

grounds of preemption.

## E. PLAINTIFF BEZDICHEK HAS DEMONSTRATED A LEGITIMATE FEAR OF INJURY AND DEFENDANTS ARE LIABLE FOR ASSAULT AND BATTERY.

A battery claim requires a showing of offensive or harmful contact along with the

defendant's intent to cause such contact. Essex Ins. Co. v. Davidson, 248 F.3d 716, 718 (8th

Cir.2001) (citing Johnson v. Morris, 453 N.W.2d 31, 40 (Minn.1990)). An assault claim requires

a showing that the defendant threatened bodily harm to the plaintiff and had the present ability to

carry out the threat. Adewale v. Whalen, 21 F.Supp.2d 1006, 1016 (D.Minn.1998) (citing Dahlin

v. Fraser, 206 Minn. 476, 288 N.W. 851, 852 (1939)).

The rule in Minnesota is that an employer is responsible for the acts of an employee

committed within the scope of employment. See Lange v. National Biscuit Co., 297 Minn. 399,

211 N.W.2d 783, 784 (1973). Under the well-established principle of *respondeat superior*, an

employer is vicariously liable for the torts of an employee committed within the course and

scope of employment. Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 910

(Minn. 1999). Such liability stems not from any fault of the employer, but from a public policy

determination that liability for acts committed within the scope of employment should be

18

allocated to the employer as a cost of doing business.  Hagen v. Burmeister & Assocs., Inc., 633

N.W.2d 497, 504 (Minn. 2001).   Defendant Hilton may be held liable if Manager Vennewtiz's

wrongful acts were intentionally committed within the scope of employment. See Marston v.

Minneapolis Clinic of Psychiatry & Neurology, 329 N.W.2d 306, 310-11 (Minn.1982).

Here, Defendant Manager Vennewitz sexually assaulted and battered Plaintiff Bezdichek

on not just one, but two separate occasions.  Plaintiff reported both incidents of sexual battery to

Defendant Hilton.  The first time, where Manager Vennewitz grabbed Plaintiff's bare breasts,

Manager Thompson laughed off her concerns and Human Resources ignored her complaint.

Based on this incident, Defendant Hilton had notice of the potential for additional harm.  On the

second occasion, Manager Vennewitz pushed Plaintiff up and down on his erect penis.

Plaintiff's facts must be accepted for purposes of summary judgment.  Plaintiff has

clearly demonstrated a prima facie case of assault and battery against both Defendants Hilton and

Vennewitz, making summary judgment inappropriate.

## F. PLAINTIFF BEZDICHEK HAS SET FORTH A PRIMA FACIE CASE OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

To establish a claim for negligent infliction of emotional distress, a plaintiff must show

that she was within a zone of danger of physical impact or can demonstrate a direct violation of

her rights, reasonably feared for her safety, and suffered severe emotional distress with

accompanying physical manifestations.  Wall v. Fairview Hosp. & Healthcare Servs., 584

N.W.2d 395, 408 (Minn. 1998) (citing Stadler v. Cross, 295 N.W.2d 552, 553 (Minn. 1980)).

The zone of danger is limited to actual physical danger caused by the defendant's negligence. Id.

(citing Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 31 (Minn. 1982)).

Preemption does not apply in the present situation because Plaintiff Bezdichek was

sexually assaulted/battered.  She was not only in the zone of danger, but suffered a direct

violation of her rights, with resulting physical manifestations. While she may not have sought

psychological treatment, she has suffered physical manifestations of emotional distress, making

summary judgment inappropriate.   Finally, the behavior was indisputedly foreseeable as

Defendant Hilton was informed of the first battery, yet took no action to stop the behavior. As

such, Plaintiff has set forth a prima facie case of negligent infliction of emotional distress.

## G. PLAINTIFF BEZDICHEK'S CLAIMS OF NEGLIGENT RETENTION AND NEGLIGENT SUPERVISION ARE VIABLE GIVEN THE PRIOR COMPLAINT TO DEFENDANT HILTON.

A negligent retention claim arises "when an employer *becomes aware or should have*

*become aware* that an employee poses a threat and fails to take remedial measures to ensure the

safety of others." Benson v. Northwest Airlines, Inc., 561 N.W.2d 530, 540 (Minn. App. 1997),

*rev. denied* (Minn. 1997) (citing Yunker v. Honeywell, Inc., 496 N.W.2d 419, 423 (Minn. App.

1993)).   Under Minnesota law, a viable claim of negligent retention requires the existence of at

least a threat of, or reasonable apprehension of, physical injury. Thompson v. Olsten Kimberly

Qualitycare, Inc., 980 F. Supp. 1035, 1041 (D. Minn. 1997) (citing Bruchas v. Preventive Care,

Inc., 553 N.W.2d 440, 442-43 (Minn. Ct. App. 1996)).   Unlike negligent supervision, a claim of

negligent retention imposes direct liability (as opposed to vicarious liability) upon an employer

for its employee's actions. Yunker, 496 N.W.2d at 422.

Plaintiff Bezdichek's allegations in this case raise issues of fact regarding whether

Defendant Hilton was negligent in retaining employees who had a propensity to harm Bezdichek.

It is well established in Minnesota that sexual harassment and assault of this sort involves

enough of a threat of a physical injury to support a negligent retention claim. Smith v. DataCard

Corp., 9 F. Supp. 2d 1067 at 1081; D.W. v. Radisson Plaza Hotel Rochester, 958 F. Supp. 1368,

1378 (D. Minn. 1997); Mandy v. Minnesota Mining & Mfg., 940 F. Supp. 1463, 1470-72 (D.

20

Minn. 1996); Thompson v. Campbell, 845 F. Supp. 665, 676 (D. Minn. 1994). Defendant Hilton

had an obligation to take remedial measures to stop Defendant Manager Vennewitz's behavior

after the first sexual battery. However, the company laughed off the complaint and took no

action.

The same is true with respect to Plaintiff Bezdichek's negligent supervision claims

against Defendant Hilton. Negligent supervision is the failure of an employer to exercise

ordinary care in supervising the employment relationship so as to prevent foreseeable

misconduct of an employee from causing harm to others. Olsen v. First Church of Nazarene,

661 N.W.2d 254, 264 (Minn. App. 2003). Again, Defendant Hilton utterly failed in its duty to

protect Bezdichek from Defendant Manager Vennewitz. Defendant Hilton was on notice of

Vennewitz's propensity to commit harm, but it did nothing to stop the foreseeable sexual

batteries that occurred. As a result, summary judgment is inappropriate.

## H. PLAINTIFF BEZDICHEK HAS DEMONSTRATED A PRIMA FACIE CASE OF INVASION OF PRIVACY/INTRUSION UPON SECLUSION.

The Restatement (Second) of Torts, § 652(b) (1977), states:

> One who intentionally intrudes, physically or otherwise, upon the
> solitude of another or his (sic) private affairs or concerns, is subject
> to liability to the other for invasion of his (sic) privacy, if the
> intrusion would be highly offensive to a reasonable person.

Minnesota adopted this tort, known as intrusion upon seclusion, in 1998. Lake v. Wal-

Mart Stores, Inc., 582 N.W.2d 231 (Minn. 1998). There are three elements to the intrusion upon

seclusion tort: (1) an intrusion, (2) that is highly offensive, and (3) that is into some matter in

which a person has a legitimate expectation of privacy. Swarthout v. Mut. Serv. Life Ins. Co.,

632 N.W.2d 741, 744 (Minn.App.2001). To establish liability for intrusion upon seclusion, the

defendant's interference with the plaintiff's seclusion must be substantial, must be of a kind that

would be highly offensive to a reasonable person, and must be a result of conduct to which a reasonable person would strongly object. Id. at 745. "In the context of intrusion upon seclusion, questions about the reasonable person standard are ordinarily questions of fact, ... but they become questions of law if reasonable persons can draw only one conclusion from the evidence." Id. (alteration in original) (quotation omitted). In the context of intrusion upon seclusion, "questions about the reasonable person standard are ordinarily questions of fact, * * * but they become questions of law if reasonable persons can draw only one conclusion from the evidence." Hougum v. Valley Mem. Homes, 574 N.W.2d 812, 818 (N.D.1998) (citations omitted).

Again, determination of this issue rests primarily on questions of fact, which are inappropriate for summary judgment. Here, we have a sexual assault and battery perpetrated by Defendant Manager Vennewitz in the presence of other management. He groped Plaintiff's body, including her bare breasts, and pushed her up and down on his erect penis. Nothing is more invasive to one's person than this type of behavior. Obviously, summary judgment is not appropriate on this issue.

**CONCLUSION**

As a result of the foregoing, Plaintiff respectfully requests that this Court dismiss Defendants' Motion for Summary Judgment in its entirety.

Dated: 12/23/09                              **LORI PETERSON & ASSOCIATES**


_s/Sheila Dokken_
Lori Peterson, #212490
Sheila Dokken, #234874
_Attorneys for Plaintiff_
700 Lumber Exchange Building
10 South Fifth Street
Minneapolis, Minnesota 55402
(612)321-0606

22
